IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 13, 2002

## JAMES ROGER FORD v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Overton County**
**Nos. 3716, 3780, 4005     Lillie Ann Sells, Judge**

---

**No. M2001-01654-CCA-R3-PC - Filed June 5, 2002**

---

Petitioner, James Roger Ford, pled guilty on October 28, 1998, to the following offenses: casual exchange of marijuana, a Class A misdemeanor; sale of diazepam, a Class D felony; sale of more than 1/2 ounce of marijuana, a Class E felony; and two counts of public intoxication, a Class C misdemeanor. In addition, Petitioner entered a "best interest" plea of guilty to the charge of introducing contraband in jail, a Class C felony. The trial court sentenced Petitioner as a Range I offender to eleven months and twenty-nine days for the offense of casual exchange of marijuana, thirty days each for the two counts of public intoxication, two years for the sale of more than 1/2 ounce of marijuana, and four years each for the sale of diazepam and introducing contraband in jail, with all sentences to be served concurrently on a Community Corrections program. On November 24, 1998, a violation of Community Corrections warrant was filed. Petitioner pled guilty to violating the terms of his community-based sentence and agreed to serve the remainder of his four-year sentence in incarceration. On October 27, 1999, he filed a pro se petition for post-conviction relief, which the trial court denied after a hearing on the merits. Petitioner appeals the court's denial of post-conviction relief, alleging that he received ineffective assistance of counsel prior to and during the plea proceedings and that his guilty plea was not knowingly or voluntarily entered. Following a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

Michael R. Giaimo, Livingston, Tennessee, for the appellant, James Roger Ford.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William Edward Gibson, District Attorney General; Anthony J. Craighead, Assistant District Attorney General; and Owen G. Burnett, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

The petition for post-conviction relief filed by Petitioner alleged, <u>inter alia</u>, that his guilty plea to the charge of introducing contraband in jail was unlawfully induced because it was based on erroneous advice from his attorney and because Petitioner was under the influence of drugs at the time of his plea. Petitioner also alleged that the incorrect advice received from his attorney constituted ineffective assistance of counsel. The proof presented at the post-conviction hearing consisted solely of Petitioner's testimony. The attorney who had represented Petitioner--the subject of his claim of ineffective assistance of counsel--was terminally ill with cancer at that time and unable to appear.

At the post-conviction hearing, Petitioner testified that he was innocent of the charge concerning the introduction of contraband into jail. Petitioner claimed that he had given his counsel the names of four witnesses who could testify and exonerate him of guilt for this crime. At that time, the four witnesses were inmates at the Overton County Jail, and counsel informed Petitioner that persons who were incarcerated could not be subpoenaed to testify in court. On the day of his plea hearing, however, Petitioner discovered the four potential witnesses sitting in the jury box in court. They advised him against pleading guilty, but counsel informed him that it was "too late" then. Petitioner testified that, but for counsel's misinformation regarding Petitioner's ability to subpoena these witnesses to testify in his behalf, he would not have pled guilty to the charge of introducing contraband into jail.

During cross-examination, Petitioner acknowledged that he had pled guilty to two felonies and also entered a "best interest" plea of guilty to the contraband charge. Petitioner claimed that counsel informed him that it was necessary to plead guilty to all three charges because it was a "package" deal. Petitioner also testified regarding certain events that transpired during the plea hearing on October 28, 1998. Specifically, Petitioner recalled that he swore to tell the truth and that he was advised perjury charges would result if he did not. When asked whether he remembered telling the presiding judge that she could forgo a review of the plea procedure because he knew what was going to happen, he claimed that he could not recall the incident because "he was under the influence of maybe ten different drugs at that present time." Petitioner also testified that he had informed the court of this condition during the plea proceeding. Thereafter, the assistant district attorney questioned Petitioner concerning various other statements which he had made during that time. Petitioner claimed that he was currently unable to recall them, however, because the drugs had affected his memory. The prosecutor then asked Petitioner how, if his memory was so "fuzzy," he was he able to recall those things said to him by his attorney so clearly. Petitioner responded as follows:

> Well, each time that I . . . he set up about two or maybe three meetings for me to see
> him in his office. He told me each . . . well, he just told me flat out that he can't do
> that. And the drugs hadn't fully affected me at the time, you know, when I walked

in and saw those guys there. They were affecting me pretty much. I can remember that much pretty good. But from then on, the drugs kept affecting me more and more and it's hard for me to remember anything. That was a lot of drugs and there was different kinds of drugs. And it's hard to remember anything like that. And I had drank some alcohol with them drugs, too. It's very hard to remember.

Following the conclusion of the evidentiary hearing, the court denied Petitioner post-conviction relief in an order which contained the following findings: Petitioner's testimony at the post-conviction hearing was contradictory to past proceedings and not credible. The post-conviction court's review of the transcript of the guilty plea proceeding revealed that a lengthy and specific one-on-one discussion had transpired between the court and Petitioner concerning his rights, his decision to plead guilty, and the facts and proof of the various cases underlying his pleas. At that time, Petitioner was under oath and had assured the court that he was satisfied with his attorney, he was not under the influence of any drugs or alcohol, and he knew what he was doing. Consequently, the court had determined that his guilty pleas were voluntarily and knowingly entered. Petitioner's subsequent testimony at the post-conviction evidentiary hearing directly contradicted these statements and, because the post-conviction court determined Petitioner's credibility to be questionable, it further found that the judgments regarding Petitioner's convictions were valid and supported by knowing and voluntary guilty pleas.

With regard to Petitioner's claim that counsel had erroneously advised him that incarcerated persons in possession of exculpatory information could not be subpoenaed to testify as witnesses, the post-conviction court noted that Petitioner's testimony was uncorroborated. Accordingly, under Morgan v. State, 445 S.W.2d 477 (Tenn. Crim. App. 1969), the court found Petitioner's testimony was insufficient to sustain the burden of proof necessary to set aside a valid judgment. The court further noted that Petitioner had failed to provide the alleged witnesses at the evidentiary hearing or submit the affidavits necessary to confirm their existence.

## ANALYSIS

### I. Ineffective Assistance of Counsel

Petitioner first claims that his counsel failed to give him proper advice concerning his ability to subpoena certain potential witnesses for trial and that this failure constituted ineffective assistance of counsel. We disagree.

To succeed on a claim of ineffective assistance of counsel, a petitioner bears the burden of showing both that his counsel's performance was deficient and that this deficient performance prejudiced the outcome of the proceeding. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). To satisfy the first prong of this two-prong test, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Put another way, to prove deficient performance, counsel's acts or omissions must be "so serious as to fall below an objective

standard of reasonableness under prevailing professional norms." Id. at 687-688, 104 S. Ct. at 2064-2065; see also State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999). In Tennessee, satisfaction of the first prong requires a showing that counsel's performance was not within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).

In addition, a petitioner must establish prejudicial, and not merely deficient, performance by trial counsel. In order to establish prejudice, a petitioner must demonstrate a reasonable probability that but for the defective performance of counsel, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). In the context of a guilty plea, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim. Henley, 960 S.W.2d at 580. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

Further, the post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence in the record preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). By contrast, the post-conviction court's conclusions of law are reviewed purely de novo. Burns, 6 S.W.3d at 461. The issue of ineffective assistance of counsel presents mixed questions of law and fact. Therefore, our review is de novo, with a presumption of correctness given to the post-conviction court's findings of fact. Fields v. State, 40 S .W.3d 450, 458 (Tenn. 2001); Burns, 6 S.W.3d at 461.

Here, the sole evidence presented by Petitioner to support his claim of ineffective assistance of counsel is his testimony, which the post-conviction court found was not credible and also uncorroborated by additional evidence of any kind. The post-conviction court relied upon Morgan v. State, 445 S.W.2d 477 (Tenn. Crim. App. 1969) for its finding that Petitioner's uncorroborated testimony did not sustain the burden of proof necessary to set aside the judgment in issue. Petitioner argues that the court's reliance on Morgan is error under Sherrill v. State, 772 S.W.2d 60 (Tenn. Crim. App. 1998).

In Sherrill, a panel of this Court reversed the post-conviction court's denial of relief, finding that the petitioner had indeed received ineffective assistance of counsel. Id. at 62. The State had

argued that, under Morgan, the uncorroborated testimony of a post-conviction petitioner, per se, does not sustain the burden of proof resting upon him. This Court stated that, where an appellant alleges ineffectiveness of counsel as to pretrial consultation and preparation, the prospects are remote that he or she would normally be able to offer witnesses to corroborate his testimony given the confidential nature of attorney-client relationships. Id. at 62. This Court further observed that to hold as the State contended would effectively preclude a trial court from upholding a petitioner's claim of counsel ineffectiveness, "even where the court is convinced as to the veracity of [the petitioner's] testimony and the validity of his argument" and also "contradict the spirit if not the letter of our Supreme Court's ruling in Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975)." Id. at 63. In Sherrill, the petitioner's sole contact with his counsel did not occur until fifteen minutes prior to trial. Counsel failed to interview petitioner, properly advise him, or assist him in planning his defense, a performance which this Court was unable to consider "competent," especially when the State presented no evidence whatsoever to refute the petitioner's claim. Id. at 63.

The facts in Sherrill are clearly distinguishable from those presented in the case sub judice. The petitioner's counsel in Sherrill was clearly ineffective, and no reason was given for the absence of testimony from the attorney involved. Here, the evidence concerning counsel's ineffectiveness is not so clear. The post-conviction court considered Petitioner's credibility to be suspect and counsel was unavailable to testify for medical reasons. Moreover, although Petitioner allegedly could have substantiated his claim with evidence of the substance of the four missing witnesses' testimony, no such evidence was presented at the post-conviction hearing. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). "As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." Id. This Court will not speculate or guess concerning what the alleged witnesses' testimony might have been.

In sum, our de novo review reveals that Petitioner failed to show by clear and convincing evidence that counsel's performance was not within the range of competence demanded of attorneys in criminal cases, as required by Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), or that a reasonable probability existed that, but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence in the record preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). The evidence does not preponderate against the factual findings of the post-conviction court in this case. Moreover, questions concerning the credibility of the witnesses and the weight and value to be given their testimony are resolved by the trial judge at the post-conviction proceeding, not this Court. Black, 794 S.W.2d at 755. Petitioner is not entitled to relief on this issue.

## II. Validity of Guilty Plea

Petitioner also contends that the presence of numerous drugs in his system at the time he pled guilty affected his mental condition such that his plea cannot be considered knowing and voluntary. Consequently, Petitioner contends that his guilty pleas were not valid and his convictions should be set aside. We disagree.

According to our supreme court, "[t]he cases of Boykin v. Alabama and State v. Mackey are the landmark constitutional cases for analyses of guilty pleas." State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (outlining federal standard), and State v. Mackey, 553 S.W.2d 337 (Tenn. 1977) (Tennessee imposes additional safeguards beyond the federal standard)). In Boykin, the United States Supreme Court held that before a guilty plea is accepted, there must be an affirmative showing in the trial court that the plea was voluntarily and knowingly given. Id. (citations omitted). To this end, the trial court must discuss the matter with the accused to ensure that he has a full understanding of what the plea connotes as well as its consequences. Id. In Mackey, our supreme court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea . . . ." Mackey, 553 S.W.2d at 340. In North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970), decided the year after Boykin, the United States Supreme Court noted that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."

In determining whether a defendant's plea is "voluntary" and "intelligent," our supreme court stated that a court must consider various circumstantial factors, such as

> The relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). A plea precipitated by ignorance, incomprehension, coercion, terror, inducements, or threats, may not be considered "voluntary." Id. (citing Boykin, 395 U.S. at 242-3, 89 S. Ct. at 1712).

As previously stated, when this court undertakes review of a lower court's decision on a petition for post-conviction relief, the lower court's findings of fact are given the weight of a jury verdict and are conclusive on appeal absent a finding that the evidence preponderates against the judgment. Davis v. State, 912 S.W.2d 689, 697 (Tenn. 1995). Questions concerning the credibility of witnesses and the weight to be given their testimony are for resolution by the post-conviction court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

First, we note that the transcript of the plea proceeding reflects that the trial judge meticulously followed the requirements of Rule 11(c) of the Tennessee Rules of Criminal Procedure and State v. Mackey, 553 S.W.2d 337 (Tenn.1977), specifically advising Petitioner of his rights and making numerous inquiries to insure that his guilty plea was voluntarily and understandingly made.

Further, the record reflects that near the conclusion of the plea proceeding, the trial judge introduced Petitioner to Gary Davis, the Community Corrections program officer that would be overseeing Petitioner's sentence and drug rehabilitation program. At that time, Davis informed Petitioner and the court that Petitioner would be required to submit to a drug test immediately following the plea proceeding, after which he would be taken to the Mount New Leaf facility for twenty-eight days. Davis also explained that Community Corrections considers any participant's compliance with the rules of the program a serious matter and, if Davis was to discover that Petitioner "slipped a beer" or anything similar, Petitioner would be automatically discharged and a warrant would be issued requiring him to reappear before the court. Thereafter, the following colloquy took place:

[PETITIONER]:      Before we close, I would like to tell you right now, it's very important. I need to let you know this about the drug testing. Right now, I have probably got twenty different drugs. Twenty different drugs in my system. And I couldn't pass a drug test right now. I have got marijuana and the marijuana stays in my system 30 days.

THE COURT:      Mr. Davis would everyone to get that through [sic], he will review you on that procedure and he will find out what the last use and work-up with you on the 30 day cycle and he won't tell you until that cycle is past. Is that right, Mr. Davis?

MR. DAVIS:      What we have required, we send people to New Leaf. We do a drug test. The reason for that is to tell us what they have in the system to see if they are straight with us.

THE COURT:      But, you won't use that against him if he is honest.

MR. DAVIS:      No, Ma'm.

THE COURT:      When you tell us that you are not clean this morning, let me ask to clarify. You tell me, you have several drugs in your system. Let's be sure, to satisfy what you are doing here today and let them know now what you are doing. Okay?

[PETITIONER]:      I know exactly. At the point I am getting to, I have been doing drugs everyday and drinking for a lot of time and I have a lot of stuff into my system.

-7-

THE COURT: [Petitioner], I want to make sure that you understand everything here today.

[PETITIONER]: I do.

Clearly, Petitioner's above statements notified the court that he could have had drugs and/or intoxicants in his system during the plea proceeding. However, after considering Petitioner's remarks and questioning him further on the subject, the court determined that Petitioner's mental state was such that his pleas could lawfully be considered knowing and voluntary and that he was *not under the influence* of alcohol or drugs at the time of the guilty pleas. The transcript contains not one scintilla of evidence that Petitioner was impaired in his ability to understand the seriousness of the proceedings or to voluntarily enter a plea of guilty. The trial court's dialogue with Petitioner at the time of his plea was lengthy, and Petitioner was articulate throughout his conversation with the court. The post-conviction court determined that Petitioner's testimony at the post-conviction hearing was not credible, a matter which is solely within its province to resolve. In addition, the record reveals that Petitioner considered the opportunity to serve his sentence in a Community Corrections program (in lieu of going to prison) a "favor." Following a review of the record, we find the evidence does not preponderate against the post-conviction court's finding that Petitioner's pleas of guilty were both knowing and voluntary. We note that, if Petitioner was indeed under the influence of twenty different drugs at the time of his plea, this fact could have been substantiated by the results of the drug test he was required to undergo immediately after the plea proceeding. No such evidence was presented, however. Petitioner is not entitled to relief on this issue.

In sum, Petitioner has failed to prove by clear and convincing evidence that he received ineffective assistance of counsel or that his guilty pleas were not knowing or voluntary. Accordingly, we conclude that his petition for post-conviction relief was properly denied.

## CONCLUSION

For the forgoing reasons, we AFFIRM the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE